788 So.2d 608 (2001)
STATE of Louisiana
v.
Ted ADDISON.
No. 00-KA-1730.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 2001.
*611 Kevin V. Boshea, New Orleans, LA, Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Attorneys for Appellant Ted Addison.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker-Counsel of Record on Appeal, Terry Boudreaux-Appellate Counsel, Joseph A. Aluise-Trial Counsel, Douglas Freese-Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and PATRICK SCHOTT, Pro Tem.
CANNELLA, Judge.
Defendant, Ted Addison, appeals from his conviction of armed robbery, a violation of La.R.S.14:64. We affirm.
On November 15, 1999, Defendant and Nicole Cardenas (Cardenas) were charged with the armed robbery of Bryanna Leger (Leger).[1]
The Defendant was arraigned on November 18, 1999 and pled not guilty. Following numerous defense pre-trial motions, he waived a jury trial, was tried before a judge on June 26, 2000, and was found guilty as charged.[2] On August 9, 2000, the Defendant was sentenced to ten years imprisonment at hard labor, with credit for time served, but without benefit of parole, probation or suspension of sentence. On the same date, the State filed a habitual offender bill of information, charging Defendant as a second felony offender, which he denied. Defendant subsequently appealed and a brief by appointed counsel was filed in this Court on November 27, 2000.
On March 7, 2001, the trial court resentenced Defendant, pursuant to his motion to amend sentence. La.C.Cr.P. art. 881. The Defendant was ordered to serve 20 years imprisonment at hard labor, with credit for time served, but without benefit of parole, probation or suspension of sentence. The State withdrew the multiple bill.
On that same day, newly appointed appeal counsel filed motions to enroll and for leave to supplement the appellate brief. This Court granted the motions on March 8, 2001. On March 15, 2001, Defendant's counsel filed a supplemental brief with this Court that raises three additional assignments of error.
At approximately 2:00 a.m. on July 17, 1999, Leger, the store manager, and Cardenas were closing the Blockbuster Video store on LaPalco Boulevard in Harvey. They closed the register and went to the rear office to count the money. The doors to the business were locked. The proceeds taken from the register were between $5,000 and $6,000. Cardenas was at the desk and Leger was by the file cabinet in the office when Leger noticed a person out the corner of her eye. A black male, with a stocking over his head, was pointing a gun at her. He had hidden in the rest-room before the store closed. The gunman *612 ordered Leger to get on the floor. She lay on her stomach and her arms were tied behind her back. The gunman ordered Cardenas to place all the money into a mesh bag. She also gave the robber the surveillance tape. Cardenas was also told to get on the floor and she was tied up. After the robber left the store, Leger used her cell phone to call police, because the store phone had been pulled from the wall.
Lieutenant Glen Toca, Chief of the Robbery Division of the Jefferson Parish Sheriff's Office, responded to the call. He processed the crime scene. He took statements from the two victims. The robber was described by Leger as a black male, approximately 25 years of age, six feet tall, weighing approximately 220 pounds, wearing khaki shorts, a blue plaid shirt and a stocking over his face. While waiting for the police, Cardenas, who had not been scheduled to work that shift, was anxious to leave. She complained that she was in a hurry because she had a date.
While still at the store that night, Cardenas received a phone call, which was later traced to the cell phone of her boyfriend, Melvin London (London). During the call, Cardenas claimed that she heard male voices talking about the armed robbery of a female subject.
According to Cardenas, following the robbery, she went home to the apartment which she shared with her roommate, Shenette Jackson (Jackson). Upon her arrival at the apartment, she was met by Jackson and Jackson's friend, the Defendant, who gave them each $596 from the robbery. In explaining the reduced amount of money, the Defendant told her that some of the money had been lost when the money bag tore.
Cardenas gave several statements to the Jefferson Parish Sheriff's Office. On October 27, 1999, she confessed to Lieutenant Glenn Toca that she and the Defendant planned the Blockbuster robbery and that he alerted her when it was to occur. At that time, she implicated Jackson in the robbery.
London gave a statement to police on October 1, 1999 that Cardenas told him that she and the Defendant planned and executed the Blockbuster robbery and that her roommate drove the getaway car.
At trial, Cardenas admitted that she and the Defendant planned and executed the armed robbery. She testified that the Defendant was the gunman, that Jackson was involved, but not London.
Jackson testified at trial that she, Cardenas and the Defendant had spoken of robbing the Blockbuster Video store where Cardenas worked. She claimed that she thought they were joking. She said that the Defendant came to the house early in the morning of July 17, 1999, but that she had been sleeping and was not sure of the time. However, she admitted that morning giving the Defendant a ride and receiving money from the robbery.
The Defendant and his current girlfriend, Lisa Henry, testified that on the night of July 17, 1999, they were together all night playing video games and watching a movie. He stated that he learned about the robbery from Jackson, after it occurred. He denied planning the robbery or robbing the Blockbuster store. He claimed that he absolutely remembered where he was that night because he missed a friend's birthday celebration in order to stay home with his girlfriend. His recollection was of the night of July 17, 1999. The robbery occurred however, in the early hours of that morning.
On appeal, the Defendant asserts that the verdict was contrary to the law and evidence, that he received ineffective assistance of counsel, that the trial judge erred in denying the motion for new trial, and *613 that the trial judge erred in denying his motion for a post verdict judgment of acquittal.
The Defendant first contends that the evidence presented was so tainted as to be unreliable and to create a reasonable doubt as to his guilt. In particular, he alleges that Cardenas was the only person able to connect him to this crime and her testimony was not credible and was motivated by an interest to protect London. In addition, the Defendant questions the sufficiency of the identification. He argues that the testimony of Cardenas, an accomplice to the crime, was unreliable because she had given untrue statements in the past. She had at one time implicated London and Leger, and later retracted those accusations. He also points out the testimony of his girlfriend, Jackson, in which she alleged that Cardenas had implicated London as the perpetrator of the offense.[3] The Defendant also contends that he does not meet the physical description of the assailant, because he was heavier than the description by Leger and has tattoos.
In conclusion, the Defendant alleges that, absent the Cardenas testimony, there is no other testimony or evidence to tie him to this crime. Thus, the Defendant argues that, as a result of the insufficiency of the identification evidence, the trial court erred in denying his motion for post verdict judgment of acquittal.
We will address the three arguments together because they have the same standard of review.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir.2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id.
When faced with a conflict in testimony, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Ross, 00-27 (La. App. 5th Cir.5/17/00), 760 So.2d 1256, 1259. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La.App. 5th Cir.11/30/99), 749 So.2d 784. It is not the function of the appellate court to evaluate the credibility of witnesses, nor to overturn the trial court on its factual determination of guilt. State v. Gentras, 98-1095 (La.App. 5th Cir.3/30/99), 733 So.2d 113, 118, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464.
In his first assignment of error, the Defendant attacks the credibility of Cardenas, claiming that she implicated him to protect London. However, the trial judge was aware of the relationship between Cardenas and London. The trial judge *614 evaluated the testimony of the witnesses and, when faced with a conflict in the testimony between Cardenas and Defendant, he chose to believe Cardenas' testimony which implicated the Defendant as a participant in this armed robbery. Additionally, he apparently chose to believe that London acquired knowledge of the crime after the fact, when the information was supplied by Cardenas. The record supports these findings.
The Defendant next alleges that there was insufficient identification evidence to link him to this crime. In order to carry its burden under Jackson, the state is required to negate any reasonable probability of misidentification. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, 902; State v. Washington, 00-301 (La. App. 5th Cir.9/26/00), 769 So.2d 1235, 1239. While the testimony of a co-defendant in a crime should be received with a great deal of caution, a jury or judge may nonetheless convict on this testimony if it is deemed sufficient. State v. May, 339 So.2d 764, 775 (La.1976).[4]
In addition to Cardenas, Jackson, and the Defendant, both London and Leger were suspects at one time during the investigation. Leger's name was given to police by Cardenas during an interview following the robbery. London's name was given to police in a statement by Jackson and she allegedly received the information from Cardenas. At trial, Cardenas testified that she lied about Leger's involvement in order to shift the blame from herself.
Lieutenant Glen Toca testified at trial that London had been a suspect, but none of the witnesses accused him of being the perpetrator and he had an alibi to his whereabouts on the night of the robbery. Lieutenant Toca believed London's alibi and was aware that there were strained relations between London and Cardenas resulting from a physical altercation.
At trial, Cardenas admitted that she had lied in her initial statement to police when she implicated Leger. She explained that the reason she did this was to remove the blame from herself. Cardenas also unequivocally denied that London had anything to do with the robbery. She testified that she and the Defendant planned the armed robbery and that Defendant was the gunman. She also stated that Jackson was involved in the crime. Both she and Jackson testified that Jackson shared in the monies recovered, although Jackson did not admit to planning the crime.
With regard to the physical description of the gunman, Leger testified that he was a "heavy" black male, who was approximately five feet 10 inches tall and 225 pounds. She did not notice any scars or tattoos, but she only saw a full view of him for a few seconds, before she was ordered to lie face down on the floor and not to look at him or he would kill her.
The trial judge heard the testimony and observed the witnesses. He apparently chose to believe the Cardenas' trial testimony, rather than her statements made prior to her pre-trial admission of guilt. In addition, he also apparently believed that the Defendant fit the physical description given by Leger, recognizing that her description would have been tempered by the short time that she had to observe him and the events transpiring during the commission of the crime. Furthermore, the *615 trial judge observed the Defendant in the courtroom and apparently felt that he sufficiently met the description given to police. These are credibility determinations which will not be disturbed on appeal.
After our review of the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could find that the State proved the essential element of identity, beyond a reasonable doubt. Since the State proved the identity element of the crime, the trial court did not err in finding the Defendant guilty as charged of armed robbery.
The Defendant also argues that the trial court erred in refusing to grant the motion for post verdict judgment of acquittal because the State failed to prove identity.
The appellate review of the denial of the motion for post verdict judgment of acquittal is controlled by the standards set forth in Jackson v. Virginia, which is codified in La.C.Cr.P. art. 821. For the reasons previously discussed, we have found that the State proved the element of identity. Thus, we find no error in the denial of the motion for post verdict judgment of acquittal.
The Defendant next contends that he received ineffective assistance of counsel because London's partial statement was introduced into evidence without London being subject to cross examination and because defense counsel failed to ask for a continuance after subpoenas were issued, but not served, for the post-trial hearing.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5th Cir.4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, and 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5th Cir. 7/1/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388.
In order to show prejudice, the defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct. Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068; Soler, 636 So.2d at 1075.
Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. See: State v. Peart, 621 So.2d 780, 787.
As the court in Strickland noted 466 U.S. at 688, 104 S.Ct. at 2065:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional *616 assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy" ... (Citations omitted)
Defendant first alleges that defense counsel was ineffective for allowing the statement of London to be admitted into evidence through the testimony of Lieutenant Toca. He argues that the statements were hearsay and unfairly prejudiced him by implicating him in the crime. The State counters that any error in this regard is harmless.
"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial, which is offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801. Although a statement may constitute inadmissible hearsay, if the statement is merely cumulative or corroborative of other evidence, the admission of the evidence is harmless error. State v. Hester, 99-426 (La.App. 5th Cir.9/28/99), 746 So.2d 95, 107.
London's statement recited by Lieutenant Toca at trial that Cardenas told him that she and the Defendant planned and executed the Blockbuster Video Store armed robbery was hearsay. Although Cardenas testified, London did not. Therefore, he was not subject to cross-examination. To allow the admission of this evidence without an objection was error by defense counsel. However, we find that the error was harmless because the evidence was merely cumulative of the testimony given by Cardenas at trial. Thus, the Defendant has failed to prove "prejudice" under the Strickland test.
The Defendant next argues that his trial counsel was ineffective in not seeking a continuance of the hearing on the motion for a new trial and post verdict judgment of acquittal, when it was discovered that certain subpoenas had not reached witnesses on time. Defendant sought a post verdict judgment of acquittal on the basis of insufficient evidence to convict him. The motion for a new trial alleged that there was newly discovered evidence and the verdict was contrary to the law and the evidence.
The State alleges that the evidence sought to be elicited from the witnesses was already in evidence and, hence, no error occurred.
The right to compulsory process is the right to demand subpoenas and have them served. State v. Latin, 412 So.2d 1357 (La.1982).
In order to be entitled to a continuance to secure the presence of a witness, the party must show actual necessity for the witness, materiality of the testimony, a probability that the witness will be available at the time to which the hearing is deferred and due diligence in attempting to procure the witness for the hearing. La.C.Cr.P. art. 709. The granting of a motion for a continuance in a criminal case because of the absence of a witness rests within the sound discretion of the trial court judge. La.C.Cr.P. art. 712.
In particular, the Defendant alleges that counsel should have sought a continuance to secure the presence of three absent witnesses, Jackson, her mother, and Monty Pete (Pete).
Defendant argues that the testimony of Jackson and her mother were essential for his motion because, if called, they would have testified that Jackson's statement to Lieutenant Toca was coerced.
Our review of the record indicates that this same evidence was contained in a letter attached to Defendant's post trial motions and the witnesses' testimony would have been cumulative. Thus, we find no *617 error occurred when trial counsel failed to seek a continuance due to the absence of these witnesses.
The Defendant next contends that Pete was a crucial witness in that he would have testified that he visited the Defendant at his home on the night of the robbery and that he gave the Defendant a ride the next day to Jackson's apartment. He claimed that this proposed testimony was newly discovered evidence.
The record indicates that the Defendant and his girlfriend both testified concerning his whereabouts on the night of the robbery. As part of the alibi defense, they testified that the Defendant was at home all night and did not leave the house until the next morning to go to Jackson's apartment. Thus, the evidence sought to be presented by Pete concerning the Defendant's whereabouts at that time, was also merely cumulative and added nothing material. Thus, there was no error by trial counsel in failing to obtain a continuance in order to have Pete brought to testify at the hearing on the motions.
Finally, the Defendant alleges that certain medical records that had been subpoenaed for the hearing were not produced. The Defendant claims that the medical records would prove his height and weight, in order to show that they differed from those given of the perpetrator of the armed robbery.
The record shows that this trial judge had this information which appeared on his drivers license, a copy of which was admitted into evidence. Again, the evidence sought to be produced was merely cumulative and as such, would not have supported a motion for continuance.
Although the Defendant alleges that the trial court erred in denying the Motion for New Trial, he neither briefs nor argues this assignment of error. Assignments of error that are neither briefed nor argued are considered abandoned. State v. Allen, 451 So.2d 618 (La.App. 5th Cir.1984); Uniform Rules Courts of Appeal, Rule 2-12.4. Accordingly, this assignment of error presents nothing for review.

ERROR PATENT REVIEW
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 205. The review reveals no errors patent in this case.
Accordingly, the Defendant's conviction and sentence are hereby affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Separate proceedings were conducted for the Defendant and Cardenas. This appeal only involves the Defendant.
[2] Defendant filed motions for post verdict judgment of acquittal and new trial, which were denied on August 7, 2000.
[3] Jackson pled guilty to accessory after the fact to the armed robbery in this case.
[4] See also: State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, 801, quoting State v. Schaffner, 398 So.2d 1032, 1035 (La. 1981), where it was held that when the state's case turns upon the uncorroborated testimony of an accomplice, the trial judge should instruct the jury to treat such testimony with great caution. However, when the accomplice's testimony is corroborated by other evidence, such language is not required.