*572
 
 MADELINE JASMINE, Judge Pro Tempore.
 

 | ¡^Defendant Tommy Smith appeals his conviction for theft. On appeal, he assigns two errors of the trial court: insufficient evidence to convict, and that the court erred by allowing the State to present an edited copy of the surveillance tape. For the following reasons, we affirm the defendant’s conviction.
 

 The defendant, along with Bobby A. Smith
 
 [1]
 
 and Ashley Wolbers,
 
 [2]
 
 was charged with theft greater than $1000.00, a violation of LSA-R.S. 14:67.
 
 [3]
 
 Tommy Smith proceeded to trial before a six-person jury, which was held on June 5, 2008. At the conclusion of the trial, a unanimous jury returned a verdict of guilty as charged.-
 

 On June 16, 2008, the court sentenced the defendant to imprisonment at hard labor for a term of five years. In the same hearing, the State filed a multiple | (¡offender bill alleging the defendant to be a second felony offender. The defendant admitted these allegations and his original sentence was vacated and he was re-sentenced, as negotiated, to five years incarceration at hard labor. At the conclusion of the sentencing hearing, the defendant gave notice of his intention to appeal his conviction. The matter is now before the Court on original appeal.
 

 FACTS
 

 Mr. Artie Lawson testified that he was the owner and operator of Motor Home Rentals of Louisiana, a business in Ken-ner, Louisiana. On June 26, 2007, he was on a business trip when he received a call from his sister that the office safe would not open, was jammed, and “looked like someone was fooling with it.” Mr. Lawson spoke with the police and informed them that his safe had contained over $47,000.
 

 Mr. Lawson testified that his business is outfitted with security cameras and that he viewed surveillance footage after he returned from his trip. As shown in this footage, he knew that Shelia (his niece), Manuel (a roofer) Tommy, Bobby, and Ashley, were inside the business on June 26, 2007. Mr. Lawson identified these individuals by first name only. Lawson explained that he allowed Bobby Smith to live in a camper behind the business, and that Bobby performed odd jobs for Lawson. Tommy Smith was Bobby’s brother, but did not work for Lawson. Mr. Lawson stated that he knew that Bobby Smith was incarcerated because he had pled guilty in this case.
 

 Mr. Lawson testified that only his father and sister knew he kept money in this safe. He added, however, that on a previous occasion, “Tommy” had walked into the office and observed him giving out cash from the safe. However, Tommy’s brother Bobby had never been in the office when cash was taken out.
 

 |4Mr. Lawson stated that his business has ten security cameras and that he was able to retrieve what had been recorded on June 26, 2007. He copied the tapes and
 
 *573
 
 gave them to the district attorney. The total length of these surveillance tapes was between four to five hours and covered the hours of 11 to 2.
 
 [4]
 
 In order to make a shorter version of the tape, Mr. Lawson stated that he “cut out the areas where nobody was in.” He testified that the video accurately reflected what happened on June 26, 2007. This condensed tape was admitted into evidence and played for the jury. The three tapes with unedited footage were admitted into evidence but were not played for the jury.
 

 Mr. Lawson described the layout of his premises and stated that his safe was located in an accounting office that only he, his father, and his sister went in. At the beginning of the video surveillance, Mr. Lawson stated that he saw “Tommy,” the defendant, inside. Tommy was not his employee and was not supposed to be there. Neither Tommy nor Bobby had been asked to conduct any repairs with tools during the time he was gone. From the tape, it can be seen that Tommy left with a dolly and went to the warehouse. The tape revealed Bobby and Tommy, together, involved in a great deal of coming and going throughout the business. Mr. Lawson was surprised to see Tommy, accompanied by his brother, in the yard. At one point, Tommy went to the tool bench.
 

 When Mr. Lawson returned from his trip, the safe was not in the position it had been. He also observed that the DVR that recorded surveillance had been shifted. Although his building was equipped with a security alarm, it did not go off that evening. Mr. Lawson explained that while he allowed Bobby to live in a trailer behind the office, he had expressly explained that Bobby and Tommy did not | Bneed to be in the office. Furthermore, Mr. Lawson had in the past instructed Bobby not to leave his brother on the premises when he was not there.
 

 Paul Scamardo, Sr. testified that he was present at the business the day after the incident. Mr. Lawson’s sister asked him to open the safe. He saw the safe, with “bits and particles” on it and pry marks around the door. In investigating, he located a lot of tools out of place throughout the business. Specifically, he observed a pair of pliers and a screwdriver in the room and located a tire iron under a towel rack in the bathroom. He explained that a person can enter this bathroom without being seen on the video camera.
 

 Sheila Marie Slayton testified that Arthur Lawson, III was her uncle. She was working at the business on June 26, 2007. She testified that she knew Bobby and his brother Tommy. She knew Ashley because she was Bobby’s girlfriend. On the date of June 26, 2007, she saw Bobby and Tommy walking in and out a lot. She did not observe Bobby and Tommy the entire day because Ashley convinced her to leave the office to get something to eat. Later, she saw Bobby and Tommy coming out of the front office.
 

 Ashley Marie Wolbers testified that her ex-boyfriend was Bobby Smith. She testified that Bobby Smith committed the theft from the business. She stated that she had pled guilty to being an accessory after the fact in this case. She denied knowing about the theft at the time of its occurrence.
 

 Bobby Smith testified that he was incarcerated at LaSalle Correctional Center because he stole $48,000 from Artie Lawson. He denied asking his brother Tommy to be a lookout while he took the money from
 
 *574
 
 the safe. He also denied ever telling his brother that he had taken $48,000. Bobby Smith also stated that his memory of events was impaired because he was on “Xan-bars” at the time.
 

 \ .ASSIGNMENT OF ERROR NUMBER ONE
 

 The defendant argues that the evidence introduced at trial is insufficient to prove the elements of theft beyond a reasonable doubt.
 

 The constitutional standard for evaluating sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Ortiz,
 
 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930,
 
 cert. denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
 

 All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.
 
 State v. Jupiter,
 
 06-93, p. 6 (La.App. 5 Cir. 6/28/06) 934 So.2d 884, 888. The determination of the weight of evidence is a question of fact that rests solely with the trier of fact.
 
 State v. Upchurch,
 
 00-1290, p. 4 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 402. If there is a conflict in the testimony, the trier of fact may accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Addison,
 
 00-1730, p. 4 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613,
 
 writ denied,
 
 01-1660 (La.4/26/02), 814 So.2d 549. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to convict.
 
 Id.
 

 The reviewing court may not impinge on the findings of fact except to the extent necessary to guarantee constitutional due process.
 
 State v. Mitchell,
 
 99-3342, p. 7, 772 So.2d 78, 83 (La.10/17/00). The trier of fact’s rational credibility calls, evidence weighing, and inference drawing are preserved, because the sufficiency inquiry does not require an appellate court to ask itself whether it |7believes that the evidence at trial established guilt beyond a reasonable doubt. Furthermore, an appellate court does not evaluate the credibility of witnesses and should not overturn a factual determination of guilt.
 
 Addison,
 
 00-1730, p. 4, 788 So.2d at 613.
 

 The defendant in brief argues that the evidence against him was circumstantial. Under LSA-R.S. 15:438, “[t]he rule as to circumstantial evidence is: ‘assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.’ ” This requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt.
 
 State v. Arceneaux,
 
 05-338 (La.App. 5 Cir. 12/27/05), 930 So.2d 44, 48. In evaluating other possible hypotheses in circumstantial cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of events. The reviewing court evaluates the evidence in the light most favorable to the prosecution and determines if the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard.
 
 State v. Davis,
 
 92-1623 (La.5/23/94), 637 So.2d 1012, 1020,
 
 cert. denied,
 
 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
 

 
 *575
 
 In this case, the defendant was convicted of theft over $500, a violation of LSA-RS. 14:67. Theft is defined as follows:
 

 Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. -
 

 |sTo support a conviction for the crime of theft, the State is required to prove that the defendant misappropriated or took a thing of value, that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken. LSA-R.S. 14:67;
 
 State v. Hebrard,
 
 94-410, p. 2 (La.App. 5 Cir. 1/31/95), 650 So.2d 352, 353.
 

 The State may prove the defendant’s guilt by showing that he served as a principal to the crime by aiding another. LSA-R.S. 14:24. A principal to a crime is defined as “[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.” LSA-R.S. 14:24.
 

 Only those persons who “knowingly participate in the planning or execution of a crime” are principals to that crime.
 
 State v. Pierre,
 
 93-0893 (La.2/3/94), 631 So.2d 427, 428. A defendant may only be convicted as a principal for those crimes for which he personally has the requisite mental state.
 
 Id.
 
 The mental state of one defendant may not be imputed to another defendant.
 
 State v. Coleman,
 
 02-345 (La.App. 5 Cir. 9/18/02), 829 So.2d 468, 471.
 

 Mere presence at the scene of a crime does not make one a principal to the crime.
 
 State v. Kirkland,
 
 01-425 (La.App. 5 Cir. 9/25/01), 798 So.2d 263, 269,
 
 writ denied,
 
 01-2967 (La.10/14/02), 827 So.2d 415. However, “ ‘it is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice’s intention.’ ”
 
 State v. Kirkland, supra
 
 at 269, quoting
 
 State v. Anderson,
 
 97-1301 (La.2/6/98), 707 So.2d 1223, 1225.
 

 In this case, the jury heard testimony that over $47,000 was stolen from Mr. Lawson’s safe at Motor Home Rentals. The jury saw video surveillance tapes that 19revealed the defendant, who was not an employee of the business and who was not supposed to be inside, in the interior of the building on the day the money was stolen. Although the defendant’s brother testified that the defendant did not participate in the theft, the videotape showed activity on the day of the theft by both Bobby and Tommy Smith engaged in a pattern of movement all around the business. The video reveals that for most of this time, the brothers moved around the premises together. In several instances, the video reveals the defendant peering out from a vantage point. From this evidence, the jury had evidence sufficient to conclude that the defendant either participated directly in the theft, assisted in the theft, or was ready to assist in the theft. In light of the testimony and the video surveillance, we find that the jury had sufficient evidence to convict.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 Defendant argues that the Court erred by allowing the State to present a copy of the surveillance tape when it was
 
 *576
 
 not the original tape and it was edited by-Mr. Lawson.
 

 At trial, Mr. Lawson testified that his security cameras recorded about four to five hours of surveillance. At trial, three tapes were introduced as State’s exhibit 3. Because of their length, the state specifically indicated that it did not intend to play the tapes for the jury. In order to shorten viewing time, Mr. Lawson made a shorter version by cutting out those portions where no one appeared. Over the defendant’s objection on the basis of C.E. art. 1002 and 1003, the trial judge allowed the introduction and playing of edited videotape.
 

 The defendant now objects, as he did at trial, to the introduction of a shortened version of the surveillance tape. He contends that this tape was no |1(llonger a “true copy” of the original recording and that it is the original that should have been offered into evidence.
 

 In general terms, before evidence can be admitted, it must be shown that, more probably than not, the evidence is connected to the case. Once such a foundation has been established, the weight to be given the evidence is a question for the jury.
 
 State v. Anthony,
 
 98-0406 (La.4/11/00), 776 So.2d 376, 388,
 
 cert. denied,
 
 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000).
 

 In more specific terms, except as otherwise provided, LSA-C.E. art. 1002 requires that the contents of a recording be proved by the original. A duplicate is admissible to the same extent as an original under LSA-C.E. art. 1003 unless a “genuine question is raised as to the authenticity of the original” or if “it would be unfair to admit the duplicate in lieu of the original.” LSA-C.E. art. 1003(1) and (2).
 

 Although not mentioned during the course of trial or by the defendant on appeal, codal provisions address the admissibility of summaries. LSA-C.E. art. 1006 provides that the contents of otherwise admissible voluminous writings, recordings, or photographs that cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. Furthermore, the question of whether the contents of the recording correctly reflect the contents of the original is an issue for the trier of fact. LSA-C.E. art. 1008.
 

 The article also provides that originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that the originals or duplicates be produced in court. LSA-C.E. art. 1006. In light of the fact that the original tapes were introduced into the record, we find that the originals were available to the defense.
 

 |uThe admissibility of a relevant videotape is largely within the discretion of the trial judge.
 
 State v. Johnson,
 
 30,078 (La.App. 2 Cir. 12/10/97), 704 So.2d 1269,
 
 writ denied,
 
 98-0382 (La.6/26/98), 719 So.2d 1054. Absent a showing of prejudice, a conviction will not be overturned on the ground that the best evidence was not produced.
 
 Id. State v. McGuffie,
 
 42,-069, p. 8 (La.App. 2 Cir. 8/1/07), 962 So.2d 1111, 1116,
 
 unit denied,
 
 976 So.2d 1283, 07-2033 (La.2/22/08).
 

 Finally, in the text of his brief on appeal, the defendant argues that the original copy taken straight from the hard drive should have been used at trial. The defendant is not entitled to relief on this claim: had the defendant desired to introduce the original tapes, already in evidence, he need only have played these tapes, which had previously been placed in evidence, for the jury.
 

 
 *577
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 The transcript of sentencing in this case shows that the trial court denied the motion for new trial and sentenced the defendant shortly afterwards in the same healing. Pursuant to LSA-C.Cr.P. art. 873, if a motion for new trial is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. There was no express waiver of delays, nor was there an objection to the imposition of sentence.
 

 In
 
 State v. Jones,
 
 07-271 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143, 1149, this Court noted the general rule that where a defendant challenges a non-mandatory sentence and the delay is not waived, his sentence must be vacated and l^the case remanded for resentencing. This Court also noted that the Supreme Court of Louisiana has held:
 

 Although C.Cr.P. art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least 24 hours after denial of post-trial motions, there has been no objection raised regarding the sentence imposed in this case and no showing or suggestion that defendant was prejudiced by the failure to observe the delay. Judicial efficiency therefore dictates that this court need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged.
 

 Id.
 
 at 1149-50, quoting
 
 State v. White,
 
 404 So.2d 1202, 1204 (La.1981).
 

 In this case, after the denial of his post-trial motions, the defendant was sentenced within statutory limits for theft. In the same hearing, he was re-sentenced, after his admission that he was a second felony offender. The defendant made no contemporaneous objection to his sentence nor does he raise issues on appeal with regard to his sentences. In light of the lack of objection or prejudice, this error is harmless and does not require remand.
 

 Additionally, in resentencing the defendant as a habitual offender, the court ordered that the defendant serve five years at hard labor. The court, however, failed to order the statutory restrictions prohibiting parole or suspension of sentence. LSA-R.S. 15:529.1(G) requires that all habitual offender sentences be imposed without benefit of probation or suspension of sentence. These restrictive provisions are self-operating by operation of LSA-R.S. 15:301.1 and, as this Court observed in the co-defendant’s case, do not require corrective action.
 
 Smith,
 
 08-579 at 6, 9 So.3d 238.
 

 Accordingly, the defendant’s conviction is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Bobby A. Smith pled guilty as charged on February 13, 2008. The conviction and sentence have been upheld by this Court.
 
 State v. Smith,
 
 08-579 (La.App. 5 Cir. 2/25/09), 9 So.3d 238.
 

 [2]
 

 . Ashley Wolbers pleaded guilty on June 5, 2008, to a reduced charged of accessory after the fact to theft over $500. Ms. Wolbers admitted the fact of her guilty plea during her testimony in this case. As of the date of this opinion, she has not sought review in this Court.
 

 [3]
 

 .By statute, the maximum grade for the crime is theft in the amount of $500.00 or more. LSA-R.S. 14:67 B(l). There is no separate category for theft of property valued over $1,000. Therefore, theft of property valued over $500 applies in this case.
 
 State v. Ramsdell,
 
 06-644, p. 2 (La.App. 5 Cir. 12/27/06), 949 So.2d 508, 513.
 

 [4]
 

 . The witness did not specifically state whether these times were AM or PM. The video surveillance footage played for the jury reveals daylight during the entire coverage. The witness also stated that the time stamp began at 11:19 in the morning.