WALTER J. ROTHSCHILD, Judge.
^Defendant, Shawn McFloyd, was charged by bill of information with possession of cocaine, in violation of LSA-R.S. 40:967(C). He pled not guilty. At trial, a unanimous six-person jury found defendant guilty. Defendant was sentenced to five years at hard labor in the Department of Corrections.

FACTS

On October 12, 2007, Officer Matthew Laroche of the Gretna Police Department was on patrol. At approximately 11:23 p.m., Officer Laroche observed two men standing in the road at the intersection of Monroe and Columbus Streets, signaling cars using hand motions, attempting to “flag [them] down” to get their attention. None of the cars stopped. Officer Laroche exited his marked police unit to investigate because the area was a high drug traffic area, it was late, and the men were exhibiting odd behavior.
As he approached the two men, later identified as defendant and Cody Melan-con, Officer Laroche observed that they were incapacitated, stumbling or | .¡standing uneasily, and “glassy eyed.” Officer La-roche testified that it was “clearly apparent that they were incapacitated by some sort of narcotic.” At that point, Officer Laroche advised defendant and Mr. Me-lancon of their Miranda[1] rights and informed them that they were being arrested for public intoxication.
While Officer'Laroche was placing defendant in handcuffs, Mr. Melancon fled the scene. Officer Laroche was able to leave defendant in the custody of other *857 officers, who arrived in response to his call for assistance, and pursue Mr. Melancon. Officer Laroche stated that he chased Mr. Melancon into a residence on Columbus Street, where Mr. Melancon was ultimately apprehended. After a brief struggle, Mr. Melancon was then searched and arrested for public intoxication and possession of crack cocaine, which was subsequently found in his sock.
After apprehending Mr. Melancon, Officer Laroche exited the residence on Columbus Street, returned outside, and performed a weapons and contraband search on defendant. Officer Laroche asserted that the other officers did not search defendant because it was his arrest. The search of defendant yielded the discovery of five “rock off-white” substances consistent with crack cocaine, which were found in his front, right pants pocket. The evidence field tested positive for the presence of cocaine. Officer Laroche testified that he searched his patrol unit to ensure there were no drugs before and after defendant was placed in it, as was standard procedure.
Raven Barrois, an expert in the analysis of controlled dangerous substances, testified that she tested the rock-like substances seized in this case. Ms. Barrois testified that these samples tested positive for cocaine.
Dennis Moore, who lived at 631 Columbus Street, testified for the defense. He testified that he knew defendant and Mr. Melancon, who both lived near him. |4He further testified that on the night of the incident, Cody Melancon entered his home. At the time Mr. Melancon entered, he went to the restroom, and two police officers entered right behind him, asking if a person just ran into his home. Mr. Moore answered in the negative, because Mr. Me-lancón did not run into his home. The officers continued to search Mr. Moore’s home, and when they got back to the restroom, Mr. Moore heard a commotion. Mr. Melancon was arrested inside Mr. Moore’s home. Mr. Moore did not know if Mr. Melancon was searched, because Mr. Melancon was in the back of the house and he could only hear what transpired.
Mr. Moore and his roommate were handcuffed and brought outside along with Mr. Melancon. After exiting his home, Mr. Moore observed three police units, one of which contained defendant. The police eventually released Mr. Moore and his roommate after they determined they did not have a record or drugs in their possession. Mr. Moore testified that he did not see any drugs in either Mr. Melancon’s or defendant’s possession.
Mr. Melancon, who was charged as a co-defendant, testified that he had been friends with the defendant for about two years at the time of the incident and they remained friends. He admitted to having two prior convictions for possession of cocaine, one of which resulted from charges related to the instant case.[2] Mr. Melancon testified that on the day of the incident, he was with the defendant on the sidewalk, six or eight feet away from the intersection of Monroe and Columbus Streets. Mr. Melancon left defendant and went to visit his neighbor, Dennis Moore, who had just returned home from Michigan. He went into Mr. Moore’s apartment, sat down, had a drink, and went to the restroom. “The next thing you know,” there was an officer in the house telling Mr. Moore that Mr. Melancon ran from him. Mr. Melancon was approached in the restroom, punched in the face, | ^arrested, and “carried” out of the house by three officers, with paint all *858 over him. Mr. Melancon asserted that he was never searched. He further attested that he did not have socks on that night and he went to jail without shoes or socks.
Once outside, Mr. Melancon observed four police units and additional police officers. He observed Mr. Moore in handcuffs, Mr. Moore’s roommate, some bystanders, and defendant, who was sitting in the back of a police unit. Mr. Melancon was placed in the police unit and brought to the police station where he and defendant were both removed from the unit. After they were removed from the unit, the officer went back into the car, lifted up the seat, and “came out with his hand like, ‘Bingo, look what I have,’ and he said it was [cjocaine.”
Defendant testified that on the night of the incident, he left Mr. Moore’s home, which was “right around the corner” from his house, and came upon Mr. Melancon on the sidewalk at the corner of Monroe and Columbus Streets. They had a brief conversation, possibly about “going out” to a club, and Mr. Melancon left, heading to Mr. Moore’s home. Defendant attested that he had not started partying or consuming any drinks or drugs.
Defendant was talking to two unknown females when he saw a police officer, later identified as Officer Laroche, pull up behind him. The officer asked defendant: “where did the guy go?” Defendant responded: “who you’re talking [sic], you’re talking to me?” The officer responded: “ ‘okay, smart ass, get on the car.’ ” The officer searched and handcuffed defendant saying: “ ‘I’m going to ask you one more time, where did the guy go at [sic]?” When defendant responded that he did not know to whom the officer was referring, the officer stated that he was going to jail and placed him in the back of the police car.
The officer then “took a walk,” passing up Mr. Moore’s and Mr. Melancon’s homes. He looked into the field next to Mr. Melancon’s home, then walked back [fito defendant, asking him “where did he go at [sic].” Defendant again responded that he did not know.
At that point, other police units arrived on the scene. An officer took him out of the police unit and searched him. Defendant was placed in the police unit again. Defendant observed a couple of police officers enter Mr. Moore’s house and then drag Mr. Melancon out. Defendant also saw that Mr. Moore and his roommate were removed from the residence in handcuffs. Defendant declared that he did not see any of the officers search Mr. Melan-con. He also stated that Mr. Melancon was not wearing shoes when he came out of the house. The officers asked Mr. Me-lancon where the drugs were and he responded that he did not have any drugs on his person.
Defendant also testified that an ambulance arrived and the officers were accusing Mr. Melancon of swallowing the drugs. The ambulance departed when defendant and Mr. Melancon were transported to jail, together in the same police unit. Defendant stated that he asked the police officer why he was being arrested and he was told that he would find out when he got to booking. When they arrived at the police station, the officer took him and Mr. Me-lancon out of the car, pulled the seat out of the police car, and said that he found drugs.
Defendant admitted that he had two pri- or convictions for possession of stolen property, and one prior conviction for theft.
On rebuttal, Officer Laroche testified that when he approached the intersection, he observed defendant and Mr. Melancon. They were alone, and they were not talk *859 ing to any females. After Officer Laroche finished handcuffing defendant, the other officers had arrived to hold him, and Officer Laroche was then able to chase Mr. Melancon on foot. He admitted that he had a struggle with Mr. Melancon, but he did not punch him. He again stated that he found the drugs in ^defendant’s right front pocket and Mr. Melancon’s sock. Officer Laroche also testified that he did not remember an ambulance being called.

LAW AND DISCUSSION

On appeal, defendant argues that the evidence was insufficient to support the jury’s verdict. He contends that the version of events presented by Officer La-roche could not possibly have occurred because he alone did every relevant act to justify the charge and no other officer verified his story. He further contends that it was physically impossible for Officer Laroche to singlehandedly handcuff defendant and run down Mr. Melancon. Moreover, defendant and Mr. Melancon’s testimonies were consistent. Therefore, defendant asserts that the State failed to prove all of the elements of the crime beyond a reasonable doubt.
The constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id. at 7, 985 So.2d at 240.
“Circumstantial evidence is evidence of fact's or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572, p. 7 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: ^assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. However, this requirement does not establish a standard that is separate from the Jackson standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 884. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient. Id.
To support a conviction for possession of cocaine, the State must prove that the defendant was in possession of cocaine and that he knowingly possessed it. LSA-R.S. 40:967(0; State v. Ruffin, 96-226, p. 5 (La.App. 5 Cir. 8/28/96), 680 So.2d 85, 87. The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the controlled dangerous substance. State v. Proctor, 04-1114, p. 6 (La.App. 5 Cir. 3/29/05), 901 So.2d 477, 482. Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. Id.
At trial, the jury was confronted with conflicting testimony offered by Officer Laroche and the defense, through defendant and Mr. Melancon. When the trier of fact is confronted by conflicting testimony, *860 the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier-of-fact, is sufficient to convict. State v. Addison, 00-1730, p. 4 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549.
The record before us reveals that the State presented sufficient evidence for the jury to conclude defendant was guilty of possession of cocaine beyond a reasonable doubt. Officer Laroche testified that he stopped to investigate defendant and Mr. Melancon who were exhibiting odd behavior at a late hour in a neighborhood renowned for drug trafficking. Upon approaching the two men, Officer Laroche observed that they were incapacitated, stumbling, and “glassy eyed.” Officer La-roche placed them under arrest for public intoxication and began to handcuff defendant. At that point, Mr. Melancon ran away; however, after, handcuffing defendant, other officers arrived, and Officer Laroche pursued Mr. Melancon. The chase ended in Mr. Moore’s home, where Mr. Melancon was searched and arrested for public intoxication and possession of cocaine. Upon exiting the home and returning to defendant, Officer Laroche searched him and found cocaine in his front right pocket.
Conversely, defendant and Mr. Melan-con testified that they met up at the intersection of Monroe and Columbus Streets. Mr. Melancon testified that he left defendant and went to Mr. Moore’s house, where he sat down, had a drink, and went to the restroom. While in the restroom, the police entered the home, came into the bathroom, punched him, arrested him, and “carried” him out of the house.
Defendant testified that Officer Laroche pulled up and asked defendant “where did the guy go?” According to defendant, after he indicated that he did not know what the officer was talking about, defendant was handcuffed, placed in a police unit, searched, and then placed in a police unit again.
Defendant and Mr. Melancon testified that when they were transported to the police station and removed from the police unit, the officer lifted up the |10backseat and removed cocaine, which he used to charge Mr. Melancon and defendant with possession of cocaine.
The jury clearly found Officer Laroche’s testimony to be more credible than that of defendant and Mr. Melancon. Apparently, the jury rejected the defense’s contention that Officer Laroche retrieved the drugs from the back seat of his unit and charged defendant and Mr. Melancon with possession of such drugs. Further, converse to defendant’s assertions, Officer Laroche’s testimony of events is physically possible and reasonable, considering that all of the witnesses confirmed the presence of additional officers on the scene. In addition, defendant acknowledged two prior convictions for possession of stolen goods as well as a conviction for theft. Mr. Melancon also confirmed that he was twice convicted for possession of cocaine, one of which involved the instant matter. As the State asserts, these facts could have influenced the jury’s credibility determinations.
Based on the record before us, along with the applicable law, we find that the evidence was sufficient to support defendant’s conviction for possession of cocaine.
*861 Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. Our review does not reveal any errors that require corrective action.

DECREE

For the foregoing reasons, we affirm defendant’s conviction and sentence.

AFFIRMED

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Mr. Melancon stated that he pled guilty to possession of cocaine, pursuant to North Carolina V. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).