# IN THE COURT OF APPEALS OF IOWA

No. 4-020 / 13-0144
Filed March 12, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CARI JO BERGSTROM,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clay County, Charles K. Borth,

District Associate Judge.


        A defendant appeals her conviction for theft in the third degree.

**CONVICTION CONDITIONALLY AFFIRMED; SENTENCE VACATED AND
REMANDED FOR RESENTENCING.**


        Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney

General, Michael J. Houchins, County Attorney, and Kristi Busee, Assistant

County Attorney, for appellee.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**McDONALD, J.**

Cari Jo Bergstrom appeals her conviction for theft in the third degree. She contends there was insufficient evidence to support the conviction, her trial counsel rendered ineffective assistance by failing to object to an incomplete jury instruction on aiding and abetting, and the district court applied the incorrect standard when considering Bergstrom's motion for new trial. She also contends the sentence imposed was not authorized by statute. We conditionally affirm Bergstrom's conviction, vacate the sentence, and remand for resentencing.

I.

The State charged Bergstrom by trial information filed April 20, 2012, with theft in the third degree, in violation of Iowa Code sections 714.1(1) and 714.2(3) (2011). The State alleged that Bergstrom stole Xbox 360 and Wii video games valued between $500 and $1000 from Wal-Mart in Spencer. The proceeding came on for jury trial on December 18, 2012. Although there appeared to be ample evidence that Bergstrom was a principal in the theft, the State prosecuted Bergstrom under an aiding-and-abetting theory.

At trial, the State called a single witness, Christian Carlson. At the time of trial, Carlson was employed by the Clay County Sheriff's Office. Before commencing employment with the Clay County Sheriff, Carlson worked as an asset protection associate for Wal-Mart. As an asset protection associate, Carlson's responsibilities included the investigation of shoplifting.

At the end of December 2011, Carlson started working at the Spencer Wal-Mart. Carlson's supervisor asked him to investigate several customers who

frequently returned merchandise with a high dollar value in exchange for cash or a gift card. As a part of his investigation, Carlson reviewed surveillance footage from the Spencer store's cameras and "started investigating who was coming with who, what vehicles they were using, [and] the items that they were returning." Carlson became suspicious of customer Tohnya Carney. When Carlson reviewed surveillance footage from December 23, 2011, it showed Bergstrom in the store with Carney. Carlson identified Bergstrom in the courtroom. He testified as to what the surveillance footage showed:

> From what I can see on the video I can 100 percent visually notify it was Cari Bergstrom and Tohnya Carney selecting games and concealing them and exiting the store without going through a register and purchasing them.

The State entered the video into evidence and played it for the jury.

The jury found Bergstrom guilty of third-degree theft. The court sentenced her to a term of incarceration not to exceed two years in the custody of the Iowa Department of Corrections. The court suspended all but twenty days of the sentence, which were to be served in the local jail, and ordered two years' probation. Bergstrom now appeals.

II.

A.

Bergstrom contends there is insufficient evidence to support the verdict. Specifically, she contends the evidence does not show that she and Carney actually left the store with the items, that she aided and abetted any such theft, or that the value of the games was in excess of $500. We review challenges to the

sufficiency of the evidence for the correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

We first discuss the instructions provided to the jury. The court instructed the jury the State must prove the following elements of theft:

> 1. On or about the 23rd day of December, 2011, [Bergstrom] took possession or control of property of Wal-Mart, to wit: multiple Xbox games and Wii games.
> 2. [Bergstrom] did so with the intent to deprive Wal-Mart of the property.
> 3. The property, at the time of the taking, belonged to Wal-Mart.

The court gave the jury the uniform instructions regarding both general intent and specific intent. The court provided the following instruction on aiding and abetting:

> All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.
>
> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."
>
> The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part she has in it, and does not depend upon the degree of another person's guilt.
>
> If you find the State has proved the defendant directly committed the crime, or knowingly "aided and abetted" other person(s) in the commission of the crime, then the defendant is guilty of the crime charged.

Missing from the aiding and abetting instruction was an additional paragraph from the uniform jury instruction that addressed specific intent offenses in the context of aiding and abetting. The omitted paragraph states:

> The crime charged requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove the defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the defendant did not have the specific intent, or knowledge the others had such specific intent, [she] is not guilty. [1]

Bergstrom did not object to the omission of this paragraph from the aiding-and-abetting instruction. Therefore, the instruction given is the law of the case for purposes of our review as to the sufficiency of the evidence. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

"A jury's guilty verdict is binding upon us unless we conclude the record lacks substantial evidence to support such a finding." *See State v. Astello*, 602

---

[1] The omission of this paragraph, resulting in an incomplete aiding-and-abetting instruction, has been a frequent basis for appeal and has caused us to reverse convictions on two other occasions in the past year. *See State v. Burton*, No. 12-2223, 2013 WL 5760635, at *4-5 (Iowa Ct. App. Oct. 23, 2013) (discussing counsel's failure to object to the omission of the paragraph at issue herein and concluding counsel rendered ineffective assistance); *State v. Sims*, No. 11-1887, 2013 WL 530583, at *4 (Iowa Ct. App. Feb. 13, 2013) (same); *see also Shepherd v. State*, No. 09-0598, 2010 WL 2757081, at *4 (Iowa Ct. App. July 14, 2010) (finding omitted paragraph of the aiding and abetting instruction "would have been useful" if Shepherd had claimed his codefendant committed the crime rather than pursuing a general denial defense); *State v. Feye*, No. 07-0797, 2008 WL 2514740, at *3-4 (Iowa Ct. App. June 25, 2008) (preserving ineffective-assistance-of-counsel claim based on omission of this paragraph in shoplifting case similar to the case at bar); *Houston v. State*, No. 05-1591, 2007 WL 254543, at *3-5 (Iowa Ct. App. Jan. 31, 2007) (rejecting ineffective-assistance claim based on the omission of this paragraph because State offered overwhelming evidence such that defendant could not demonstrate prejudice); *State v. Perez-Castillo*, No. 05-0362, 2006 WL 2419143, at *2-3 (Iowa Ct. App. Aug. 23, 2006) (preserving similar ineffective-assistance claim because record suggested the possibility counsel's approval of the aiding and abetting instruction without inclusion of specific intent language was "conscious and informed decision").

N.W.2d 190, 197 (Iowa Ct. App. 1999). Evidence is substantial if it can "convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt." *Id.* More specifically, "the relevant question in our review of the case 'is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994)). We recognize the jury is "free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). After conducting a thorough review of the trial record, we conclude the jury's verdict is supported by substantial evidence. We will discuss the evidence in greater detail in resolving Bergstom's claim for ineffective assistance of counsel.

B.

Bergstrom contends her trial counsel rendered ineffective assistance by failing to request the specific intent language be inserted into the aiding-and-abetting instruction. We typically resolve ineffective-assistance-of-counsel claims in postconviction-relief proceedings. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). When such claims are presented on direct appeal, however, the "court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822." Iowa Code § 814.7(3). Where, as here, the record is sufficient to permit a ruling, we will address the claim on direct appeal. *See Maxwell*, 743 N.W.2d at 195. We review claims of

ineffective assistance of counsel de novo. *See Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011).

To establish a claim for ineffective assistance of counsel, Bergstrom must show by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted. See *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011). With respect to the prejudice prong, our ultimate inquiry is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires the defendant to establish "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland,* 466 U.S. at 694). The most important factor in determining whether the defendant suffered prejudice is the strength of the State's case. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006). Where overwhelming evidence establishes the defendant's guilt, and therefore the absence of prejudice, we can resolve the defendant's claim without addressing the issue of whether counsel breached an essential duty. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (noting if a "claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently"). We thus first determine whether Bergstrom suffered prejudice as a result of trial counsel's performance.

Bergstrom and Carney entered Wal-mart together at approximately 5:00 p.m. They immediately separated. Carney walked directly to customer service

to return items, and Bergstrom walked directly to the video game display case. Bergstrom looked over the display for several minutes. Then, over the course of the next eight minutes, Bergstrom personally took possession of at least nine games and placed them on top of her purse, which was in the smaller, top basket of the shopping cart. Carney joined Bergstrom at the video game case and placed her purse and bags next to Bergstrom's in the top basket of the shopping cart. Carney and Bergstrom took possession of additional games and placed them on top of the purses and bags. Carney did this in Bergstrom's presence. There can be no doubt that Bergstrom saw Carney take possession of these additional video games.

After Bergstrom and Carney each personally took games from the display, they meandered through the store, crowded with holiday shoppers, without doing any additional shopping. Bergstrom and Carney walked side-by-side and chatted, each positioned at the rear of the shopping cart. After about five minutes of wandering through store aisles crowded with holiday shoppers, Bergstrom and Carney entered the pet aisle, which had no other foot traffic. Bergstrom then left Carney's side and positioned herself several feet in front of the shopping cart. Over the next four minutes, Bergstrom remained in front of the cart looking up and down the aisle. During this same time, Carney appeared to be placing the games in the bags and purses. At one point, Carney dropped what appeared to be a video game on the floor, scrambled to pick it up, and put it back inside one of the bags or purses. Once another customer entered the aisle,

Bergstrom and Carney ceased what they were doing and again started walking through the store.

Bergstrom and Carney walked through the store for another five minutes without doing any additional shopping. They abandoned their shopping cart, took their bags, and exited the store without approaching the checkout lanes or paying for any items. At no point does the video surveillance footage show either Bergstrom or Carney placing the videogames back onto any shelf.

Carlson testified, based on his training and experience as an asset protection associate, that Bergstrom and Carney's conduct was consistent with shoplifting:

> A major one that is very popular is when females come into the store they will sit their purse directly on top of a cart. When they select their items, they will place items next to or on top of the purse so when they—they just have to go down an aisle, they can very easily slip the items into the purse . . . and use their back for cover.
> . . . .
> . . . If there is . . . a group . . . some will be lookouts, some will stand back and block, others will help them conceal so it's much faster.

Carlson also provided testimony regarding the value of the stolen games. According to Carlson, Bergstrom and Carney stole $939.29 in games by taking seventeen X-box games and three Wii games. Carlson determined the dollar amount in two ways. First, he analyzed the inventory of the shelves from which the games were removed. He testified he also could determine the value of the games by looking at the surveillance footage and locating the shelf from which Carney or Bergstrom had removed a game. Carlson explained the games were

organized by price: the top shelf sold for $69.99, the next shelf down held $59.99 games, and so on through games priced at $29.99.

This is not a typical aiding and abetting case where the defendant was merely present at a crime scene with another and there is a real question whether the defendant had the specific intent to commit theft—the "wrong place at the wrong time" or "guilt by association" cases. Here, the surveillance footage showed Bergstrom actively participated in the theft. *See State v. Hustead*, 538 N.W.2d 867, 869 (Iowa Ct. App. 1995) (stating that an aider and abettor approves of criminal act through active participation or encouragement). What inference could be drawn—other than Bergstrom had the specific intent to commit theft and aid and abet Carney's theft—from surveillance footage that showed Bergstrom entered the store with Carney, *personally took at least nine video games from the display*, watched her friend take more, wandered through the store until finding a relatively traffic free aisle, stood awkwardly away from her friend and in front of her shopping cart for four minutes while her friend secreted the items in their bags and purses, and walked out the front door without paying? *See id.* at 870 (stating that intent may be shown by circumstantial evidence, including presence, companionship, and conduct). We conclude there is overwhelming evidence supporting each of the elements of the offense, including the requisite specific intent. *See*, *e.g.*, *State v. Parker*, No. 11-1422, 2012 WL 3027108, at *2-3 (Iowa Ct. App. Jul. 25, 2012) (affirming conviction for theft as an aider and abettor where defendant and principal entered store, defendant personally selected a DVD from shelf and handed it to principal, and walked

through store with principal); *State v. Kirk*, No. 10-0931, 2011 WL 5394270, at *3 (Iowa Ct. App. Nov. 9, 2011) (holding that defendant failed to establish prejudice where video surveillance showed defendant and/or co-defendants taking possession of property); *State v. Rosillo*, No. A10-216, 2011 WL 382594, at *3-4 (Minn. Ct. App. Feb. 8, 2011) (holding evidence sufficient to support conviction for aiding and abetting where video surveillance footage showed defendant arrived and left with co-defendants and served as lookout); *State v. Gorayeb*, No. 09-BE-15, 2010 WL 2250439, at *4 (Ohio Ct. App. June 4, 2010) (holding evidence sufficient to support conviction for aiding and abetting theft where defendant watched principal take possession of items, walked through store with principal, and watched principal conceal items in her purse); *State v. Smith*, 13 So. 3d 570, 575 (La. Ct. App. 2009) (holding evidence sufficient where video footage showed defendant actively participated in theft).

Given the strength of the State's case, Bergstrom has not established a reasonable probability that the result would have been different had the jury been instructed in accord with the complete uniform jury instruction. Accordingly, her claim fails. *See Shepherd*, 2010 WL 2757081, at *5 (holding defendant failed to establish prejudice resulting from failure to request specific intent language in aiding-and-abetting instruction); *Houston*, 2007 WL 254543, at *5 (same).

## C.

Bergstrom next contends the district court abused its discretion in denying her motion for new trial. Iowa Rule of Criminal Procedure 2.24(2)(b)(6) authorizes the district court to grant a new trial when "the verdict is contrary to

law or evidence." "[A] verdict is contrary to the evidence under this rule if it is 'contrary to the weight of the evidence.'" *State v. Wells*, 738 N.W.2d 214, 219 (Iowa 2007). Unlike the sufficiency-of-the-evidence standard applied on a review of a motion for judgment of acquittal, the district court, in determining whether a new trial should be granted, has much broader power under the weight-of-the-evidence standard, including the ability to weigh the evidence and consider the credibility of witnesses. *See State v. Ellis*, 578 N.W.2d 655, 658-59 (Iowa 1998). "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003); *see also State v. Serrato*, 787 N.W.2d 462, 472 (Iowa 2010). However, our review of a claim the district court applied an incorrect legal standard is for legal error. *See State v. Robinson*, 506 N.W.2d 769, 770 (Iowa 1993).

In reviewing the hearing on Bergstrom's motion for new trial, we conclude the district court's ruling does not show it considered the weight of the evidence and determined whether "a greater amount of credible evidence supports one side of an issue . . . than the other." *Reeves*, 670 N.W.2d at 202. The remedy is to vacate the district court's ruling on the motion for new trial and remand for application of the weight-of-the-evidence standard. *See State v. Nitcher*, 720 N.W.2d 547, 560 (Iowa 2006) (reversing where the district court did not indicate it weighed the evidence); *State v. Scalise*, 660 N.W.2d. 58, 66 (Iowa 2003) (same); *Ellis*, 578 N.W.2d at 659 (same). If the district court determines Bergstrom's

motion for new trial should be overruled, the conviction shall stand affirmed, but she shall be resentenced based on our disposition of her illegal sentence claim. If the district court grants the motion, Bergstrom's conviction and sentence shall be vacated, and a new trial granted. We do not retain jurisdiction.

D.

"A sentence must comply with all applicable sentencing statutes[, and i]f a sentence is not authorized by statute, it is void." *State v. Manser*, 626 N.W.2d 872, 874 (Iowa Ct. App. 2001). At sentencing, the district court heard the arguments of counsel and was informed of Bergstrom's criminal history, including a prior conviction for burglary in the second degree and three prior convictions for theft in the fifth degree. The district court sentenced Bergstrom to an indeterminate term of incarceration not to exceed two years, suspended all but twenty days of that sentence, and placed Bergstrom on probation. The district court ordered that the twenty days' incarceration be served in the county jail.

Bergstrom acknowledges the sentence for an indeterminate term not to exceed two years is the authorized sentence for an aggravated misdemeanor. *See* Iowa Code § 903.1(2). She contends the court was without authority to suspend only part of that sentence and order her to serve any portion of the sentence in the county jail. *See id.* § 903.4 (providing for confinement of periods of one year or less "in a place to be furnished by the county"). We agree the district court was without authority to suspend only a portion of Bergstrom's indeterminate sentence:

> We conclude that the language in section 901.5(3), which authorizes a sentencing judge to "suspend the execution of the

sentence or any part of it," is only intended to authorize the suspension of a portion of a sentence in regard to determinate sentencing orders. No such authority exists with respect to an indeterminate sentence.

*State v. Formaro*, 638 N.W.2d 740, 741-42 (Iowa 2002). We therefore vacate Bergstrom's sentence and remand for resentencing.

**CONVICTION CONDITIONALLY AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Vogel, P.J., concurs; Tabor, J., dissents in part.

**TABOR, J.** (concurring in part and dissenting in part)

I respectfully dissent from the majority's opinion on the claim of ineffective assistance of counsel. I believe Bergstrom was prejudiced by her attorney's failure to ensure the jury was properly instructed on the State's burden to prove her specific intent under its aiding-and-abetting theory. As the majority noted in a footnote, our court has twice reversed convictions in the past year based on defense counsel's failure to object to an incomplete aiding-and-abetting instruction. *See State v. Burton*, No. 12-2223, 2013 WL 5760635, at *4-5 (Iowa Ct. App. Oct. 23, 2013) (finding confidence in outcome undermined because jurors were improperly instructed); *State v. Sims*, No. 11-1887, 2013 WL 530583, at *4 (Iowa Ct. App. Feb. 13, 2013) (remanding for a new trial because jury could have found defendant guilty without finding requisite specific intent to commit theft). I think we should take the same course here.

In this case, the marshalling instruction was phrased as if Bergstrom was the principal, asking the jury to determine if she took possession or control of property with the intent to deprive the owner. The district court then instructed the jury that the defendant was also guilty if the State proved she aided and abetted another person in the commission of the crime and defined what it meant to "aid and abet." The district court also defined general intent and specific intent[2] for the jurors but did not enlighten them on how the specific intent

---

[2] Instruction No. 22 stated:
> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

definition should be applied when the defendant was prosecuted for aiding and abetting. Defense counsel did not object to the instructions.

Neither the State nor the majority defends the performance of counsel. Counsel unquestionably breached a material duty in not asking the court to provide the jurors with the additional paragraph of the uniform aiding-and-abetting instruction that would have explained the specific-intent element.

Both the State and the majority look to the prejudice prong—describing the evidence of Bergstrom's guilt as "overwhelming." I disagree with that description. While the State's case was sufficient to sustain the jury's verdict under the given instructions, it cannot be called overwhelming, especially as to evidence showing Bergstrom's intent to permanently deprive Wal-Mart of the video games or her knowledge of Carney's specific intent.

In concluding overwhelming evidence supported the specific-intent element, the majority cites two of our unpublished cases, one of which involved sufficiency of the evidence (*Parker*, 2012 WL 3027108, at *2-3) and the other which addressed counsel's failure to challenge the weight of the evidence (*Kirk*, 2011 WL 5394270, at *3). Neither *Parker* nor *Kirk* mentions "overwhelming" evidence.

Here, the State's case consisted entirely of one witness and a spliced together surveillance tape. The witness, Christian Carlson, was not working at

Because determining the defendant's specific intent requires you to decide what [she] was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

the Spencer Wal-Mart on the day of the theft.[3] Neither Carlson nor any other employee viewed the suspects' actions in real time. Carlson's investigation focused on Tohnya Carney, based on her recruitment of two teenage girls to return merchandise. Carlson acknowledged the surveillance tapes he reviewed did not show Carney and Bergstrom the whole time they were in the store. He testified: "There are several seconds where you could say there is no video coverage of a specific area." Carlson also testified he could not be sure that games taken off the shelves were not lost somewhere else in the store. Carlson testified that when Carney and Bergstrom left the store, allegedly with the stolen merchandise, the magnetic devices in the video games should have triggered the exit alarms, but they did not. His only explanation was "[s]ometimes the machines don't work."

Moreover, the footage included in the videotape exhibit was somewhat grainy and some of the camera angles made it difficult to tell for sure what Carney and Bergstrom were doing. The critical four minutes in the pet aisle are captured from quite a distance, leaving some question as to Bergstrom's awareness that Carney may be hiding video games in her purse. The footage of the pair exiting the store does not show Bergstrom carrying any of the stolen games.

Finally, the State presented no evidence tying Bergstrom to the actual or attempted return of stolen games to the Wal-Mart service desk. The evidence in

[3] Carlson personally saw Carney and Bergstrom shopping together in the store after December 23. He approached them as they were leaving because he thought they had stolen some merchandise. But Carlson did not find any shoplifted items after the women opened their coats, a purse, and also pulled out pockets.

this case was barely sufficient, not overwhelming. A reasonable probability exists the outcome would have been different if the jury had been properly instructed. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

The majority asserts the surveillance footage shows Bergstrom "actively participated in the theft" because she "*personally took at least nine video games from the display,*" among other actions.[4] The problem with the majority's assertion is that placing merchandise in a cart is not illegal and neither is accompanying a shoplifter around the store unless—at the time of the taking—you possess the specific intent to permanently deprive the store of the merchandise or have knowledge of your companion's intent to do so.

The majority says "[t]his is not a typical aiding and abetting case where the defendant was merely present at a crime scene with another and there is a real question whether the defendant had the specific intent to commit theft." Yet that is exactly what defense counsel argued in closing. Bergstrom's attorney asserted it was "all speculation" that Bergstrom knew Carney was going to "walk right out" and "keep the stuff" and then "return it" to "get all this money." Counsel

---

[4] The majority seems to question the State's decision to pursue an aiding-and-abetting theory, declaring there was "ample evidence" Bergstrom was a principal in the theft. But it is clear the prosecution viewed Bergstrom as the accomplice, arguing in closing:

> Ms. Bergstrom was aiding and abetting the theft that was done by Ms. Carney when she was concealing the evidence. When you aid and abet, you are just as guilty as the person who is actually doing the act. Ms. Bergstrom is just as guilty as Ms. Carney is in this case of theft in the third degree, and I'd ask you [to] find Ms. Bergstrom guilty of that charge in this case.

even drew the jury's attention to the aiding and abetting instruction: "To aid and abet you need something more than mere presence. If you are at a store with someone who maybe has a plan, that doesn't make you guilty of a crime."

But without the additional paragraph of the uniform instruction, the defense was not able to support its theory Bergstrom did not know Carney's intent. The absence of the key language allowed the jury to convict without finding that on December 23, either Bergstrom personally possessed the specific intent to permanently deprive Wal-Mart of the merchandise when she aided and abetted Carney in taking the games *or* Bergstrom had knowledge Carney had the specific intent to permanently deprive. The full instruction would have offered the jurors clear guidance regarding the State's burden to prove specific intent in an aiding-and-abetting scenario involving theft. Because the issue of Bergstrom's specific intent was "vital" to her defense to the aiding-and-abetting theft charge, her counsel's failure to object to its omission is a breach of duty resulting in prejudice. *See State v. Goff*, 342 N.W.2d 830, 838 (Iowa 1983).