707 So.2d 1223 (1998)
STATE of Louisiana
v.
Sidney Bradley ANDERSON.
No. 97-K-1301.
Supreme Court of Louisiana.
February 6, 1998.
Rehearing Denied April 3, 1998.
Richard P. Ieyoub, Attorney General, Michael Harson, District Attorney, Keith A. Stutes, Lafayette, for Applicant.
Margareta Maria Lahme, Lafayette, for Respondent.
PER CURIAM.[*]
In this prosecution for second degree murder, the state could not reconcile the testimony of its eyewitnesses that the defendant fired the fatal shot with his own gun and its physical evidence indicating that the bullet came from a gun in the possession of John Palfrey at the time of the killing and retrieved from Palfrey's home by the police *1224 shortly after the crime. The state did not attempt to resolve the conflict in its evidence but argued to the court, sitting as the factfinder, that while the defendant could not "hit a barn with his gun," he was nevertheless a principal in the crime committed by Palfrey. The trial court agreed that the only reason the defendant "did not factually kill [the victim] is because he can't shoot straight," but also agreed that the defendant was a principal in the homicide and found him guilty as charged. On appeal, the Third Circuit reversed the defendant's conviction and sentence on grounds that "[t]he fact that Palfrey fired the fatal shot is not enough to establish the defendant's guilt since the evidence does not show that the defendant knowingly participated in the planning or execution of Palfrey's crime." State v. Anderson, 96-1515, p. 8 (La.App. 3rd Cir. 4/2/97), 691 So.2d 336, 339-40. However, the evidence at trial showed clearly that the defendant and Palfrey acted in concert to bring about a lethal result the defendant specifically intended. We therefore reinstate his conviction and sentence.
The fatal confrontation began with a telephone call placed by Barbara Stevens to Charles Joubert, Jr. on the night of November 20, 1993. Stevens asked Joubert to help clear her home in Lafayette of unwanted visitors, including the defendant and Palfrey, and Joubert arrived at her home in the company of Joseph Carter. After a brief exchange of words inside the Stevens home, Carter and the defendant stepped out and squared off in the street. Moments before the fistfight began, the defendant made Palfrey his "second" by handing him a gun. Palfrey was armed with his own .25 caliber, blue-steel, semi-automatic and claimed at trial, after he entered a guilty plea as an accessory to murder, that the defendant gave him a chrome .380 caliber semi-automatic. In the course of the ensuing fight, Carter and the defendant separated. The defendant turned to Palfrey, who was standing only a few feet away, reclaimed his weapon, and opened fire while charging at Carter. Witnesses recalled that the defendant yelled at the victim, "B---- [expletive deleted], you're going to die tonight," or, "Pick up your head, m---- f---- [expletive deleted], so I can kill you." In the struggle which followed, the defendant shot himself in the leg and a bullet struck Carter in the chest. Carter collapsed in the street with the bullet lodged in his back.
At trial, Joubert, and another eyewitness on the scene, Frederick Burke, testified that Palfrey handed the defendant a chrome .25 caliber gun. Burke had seen the defendant with the gun before the fight started. The other eyewitnesses remained unsure of the caliber but all persons on the scene agreed that the weapon Palfrey handed the defendant was either chrome or had a white handle. While they gave different accounts of the shooting which then transpired, the witnesses maintained that Palfrey did not fire at the victim. Palfrey also claimed that his own gun never left his back pocket. The bullet removed from Carter's back, however, matched the .25 caliber semi automatic found in Palfrey's home by the police. Palfrey had, in fact, used that gun to commit another murder less than a day before the shooting in this case. At the time of his arrest on the day after Carter's murder, the defendant informed the police that he had shot himself in his left leg with a .380 caliber bullet. That statement remained uncorroborated, however, as the bullet had passed completely through the defendant's leg and the .380 caliber casings found on the scene by the police appeared too old to have been ejected at the time of Carter's death.
We need not decide here whether a rational trier of fact reasonably could have found on this evidence that the defendant actually fired the fatal shot because all persons "concerned" in the commission of an offense, either directly or indirectly, are principals in the crime, and culpable according to the mental state they possess at the time of the offense. R.S. 14:24; State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427; State v. McAllister, 366 So.2d 1340 (La.1978). By enlisting Palfrey's aid in rearming himself after evidently concluding that he was losing the fistfight, the defendant at least indirectly encouraged his second to join him in a course of conduct involving homicidal risk. Acting in concert, each man then became responsible not only for his own acts but for the acts of the other. See State v. Tobias, 452 So.2d 157 (La.1984); State v. Temple, 394 So.2d 259 *1225 (La.1980); State v. Smith, 26,622 (La.App.2d Cir. 3/1/95), 651 So.2d 890; see also 2 W. LaFave, A. Scott, Substantive Criminal Law, § 6.7, p. 138 (West 1996) ("It is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intention."). The state therefore did not need to prove which man actually fired the fatal shot, and defendant's act in firing at close range while yelling to the victim that he would die that night otherwise supported the court's finding that he had possessed the requisite specific intent to commit second degree murder. La.R.S. 14:30.1(A)(1). Tobias, 452 So.2d at 159.
Accordingly, we reinstate the defendant's conviction and sentence and remand this case to the court of appeal for consideration of his remaining assignments of error.
CONVICTION AND SENTENCE REINSTATED: CASE REMANDED TO COURT OF APPEAL.
NOTES
[*] Victory, J, not on panel. See Rule IV, Part II, Sec. 3.