hPER CURIAM.*
In 1979, an Orleans Parish jury found respondent Edwards guilty of two counts of first degree murder and sentenced him to two terms of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This Court affirmed. State v.. Edwards, 419 So.2d 881 (La.1982). In 1997, Edwards obtained a copy of his district attorney file, see Lemmon v. Connick, 590 So.2d 574 (La.1991), and in 1998, he filed an application for post-conviction relief in which he claimed that the state suppressed exculpatory evidence in violation of his due process rights as set out in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court granted the application and ordered a new trial, but stayed its ruling pending review in this Court. After considering the pleadings before us, including an opposition filed by respondent, we grant the state’s application and reverse the ruling below.
While Edwards alleged several Brady violations in his application, the district court focused on one involving inconsistencies between the initial statements and trial testimony of the state’s only eyewitness to the murders, Willie George, the five-year-old son of Joy George, one of the victims. The previously undisclosed statements of Willie George to the ^police and to his cousin, the first adult to arrive on the scene after the shootings, reveal that the boy gave three different accounts of events he observed inside his mother’s residence after he awoke to the sound of gunfire: one in which both his mother and uncle were already dead; a second in which his mother was dead but his uncle was still alive, pleading with the perpetrators in the hallway outside of the boy’s bedroom that he did not have any jewelry to give them (the testimony jurors heard at trial); and a third in which his uncle was dead but his mother was still alive in her bedroom across the hallway pleading with the perpetrators that she did not have any jewelry to give them. Respondent argued below, and the district court evidently agreed, that if the defense could have challenged Willie George’s trial testimony with his prior statements and shown jurors that the state’s five-year-old witness was confused about the sequence of events inside the house, it could have established that the boy was also confused in his identification of the two armed men who claimed the victims’ lives.
As a general matter, the discovery articles in the Code of Criminal Procedure impose on a prosecutor in Louisiana a statutory duty to disclose exculpatory evidence to the defendant. La.C.Cr.P. art. 718; La.C.Cr.P. art. 719(A); La.C.Cr.P. art. 722. A prosecutor’s breach of this duty does not, however, interject constitutional error into the proceedings “unless the omission is of sufficient significance to result in the denial of the defendant’s right to a fair trial.” United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976); State v. Willie, 410 So.2d 1019, 1030 (La.1982). A due process violation occurs only when the previously undisclosed evidence, considered “collectively and not item by item,” establishes “not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict wor *1269 thy of confidence.” Kyles, 514 U.S. at 434-36, 115 S.Ct. at 1566-67 (citing United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985)). This standard, identical to the test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for claims of ineffective assistance, also takes into account the totality of the evidence before the judge or jury. Accordingly, “a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.” Strickland, 466 U.S. at 695-96, 104 S.Ct. at 2069.
In the case before us, the state relied on not only the eyewitness testimony of Willie George but also on Edwards’s post-arrest custodial statement in which he admitted that he was inside the George home at the time of the shootings but denied taking part in the robbery or the murders committed by two men he identified as Kenneth Fleming and Gerald Johnson. Respondent claimed that he had met Johnson and Fleming fortuitously outside the George home, and that once inside, he looked on in horror as Fleming opened fire on Willie George’s uncle and then shot Joy George as she cowered in her bed. Edwards took credit for saving Willie George’s life by knocking Fleming’s handgun down moments after Fleming shot the boy’s mother. Respondent nevertheless admitted that he left with the perpetrators after the shootings and fled with them to California, keeping some of the proceeds of the robbery, conduct entirely consistent with Willie George’s eyewitness testimony that respondent had acted in concert with Fleming and was therefore a principal in the crime even if Fleming had fired all of the fatal shots. See La.R.S. 14:24 (all persons “concerned” in the commission of a crime are principals); State v. Anderson, 97-1301, p. 3 (La.2/6/98), 707 So.2d 1223, 1224 (“Acting in concert, each [perpetrator] [becomes] responsible not only for his own acts but for the acts of the other.”); State v. Brooks, 505 So.2d 714, 717-18 (La.1987) (“Even if, as claimed, defendant did not personally pull the ^trigger, his presence and assistance up to this point provided a basis from which jurors could have concluded that he actively acquiesced in th[e] use of deadly force.”). Jurors also knew from other testimony at trial that in a pre-trial lineup Willie George had identified both respondent and Fleming as the shooters. Respondent’s statement informed jurors that the boy’s identification of Fleming was, in fact, rehable and confirmed that Willie George had confronted the shooters after awaking and so had an opportunity to view respondent as well as Fleming.
Despite its overall exculpatory cast, Edwards’s statement thus added considerable strength to a case otherwise resting on the perceptions of a five-year-old boy. In these circumstances, although the district court found otherwise, the discrepancies Edwards points to, whether considered by themselves or collectively with his additional Brady claims, do not discharge respondent’s burden under La.C.Cr.P. art. 930.2 of showing “that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Kyles, 514 U.S. at 435, 115 S.Ct. at 1566 (footnote omitted).
Accordingly, the judgment of the district court is reversed, and the convictions and sentences of respondent are reinstated.

 Traylor, J., not on panel. See La.S.Ct.Rule IV, Part II, § 3.