<u>NOT DESIGNATED FOR PUBLICATION</u>

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KJ 0187

STATE OF LOUISIANA IN THE INTEREST OF D.W.

SEP 2 1 2022

*Judgment Rendered:* _____

* * * * * * * *

Appealed from the
City Court of East St. Tammany
Juvenile Division
In and for the Parish of St. Tammany
State of Louisiana
Case No. 21 JC 2125

The Honorable Bryan Haggerty, Judge Presiding

* * * * * * * *

Katherine M. Franks
Louisiana Appellate Project
Madisonville, LA

Counsel for Appellant
D.W.

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Assistant District Attorney
Covington, LA
D. Rex English
Assistant District Attorney
Slidell, LA

Counsel for Appellee
State of Louisiana

* * * * * * * *

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

**LANIER, J.**

On May 19, 2021, the State of Louisiana filed a juvenile delinquency petition in case number 21 JC 2125 against D.W.,[1] a sixteen-year-old juvenile, based on the alleged commission of simple burglary, a violation of La. R.S. 14:62. D.W. denied the allegation. After an adjudication hearing, the juvenile court adjudicated D.W. delinquent as alleged.[2] The juvenile court later heard and denied a motion for a new trial filed by D.W. The juvenile court committed D.W. to the custody of the Office of Juvenile Justice (OJJ) until his twenty-first birthday with a recommendation of secure placement, suspended all but thirty months, and placed D.W. on parole for the remainder of his sentence. The juvenile court later modified the disposition to thirty months in the custody of the OJJ, all but twenty-four months suspended, with the recommendation of secure placement and parole supervision for the suspended portion of the disposition. D.W. now appeals, challenging the sufficiency of the evidence and the admission of hearsay testimony at the adjudication hearing. After a thorough review of the record, we reverse the adjudication, vacate the disposition, and remand for a new adjudication hearing.

## STATEMENT OF FACTS

Based on evidence presented at the adjudication hearing, on or about May 14, 2021, Officer Thomas Swanton of the Slidell Police Department (SPD) was dispatched to 202 Oriole Drive in response to a vehicle burglary that had just occurred at that location. SPD officers who arrived on the scene were informed that a neighborhood resident saw a number of juveniles in the area and observed one of the juveniles enter a pickup truck equipped with a camper. After learning of

---

[1] D.W.'s date of birth is October 1, 2004. Herein, juveniles will be referred to by their initials to protect their identity. See Uniform Rules of Louisiana Courts of Appeal, Rule 5–2.

[2] The above allegation was combined at the adjudication proceeding with allegations filed under petitions 21 JP 2152 and 21 JC 2153. D.W. was not adjudicated as to all allegations under petition 2153, but was adjudicated delinquent under petition 2152, based upon which he filed a separate appeal in this court. See **State in Interest of D.W.**, 2022-0188 (La. App. 1st Cir. __/__/__).

2

what happened, the owner[3] looked in his truck and initially observed that his wallet, which he had left in the center console, was missing. He later found his wallet on the floor in the back of the truck, though a single dollar bill was missing from the wallet.

Officer Swanton interviewed witnesses at the scene, including the victim, while other SPD officers in the area pursued the juveniles. The victim did not see anything and could only relay "secondhand" information. A juvenile witness, J.O., told Officer Swanton that he observed several juveniles going down the street. J.O. said that one of them was riding a bicycle and one was wearing a red jacket. J.O. further reported observing one of the juveniles "going into" the truck and then "taking off." J.O. told the victim's son about his observations, who in turn told the victim. Another witness, Miles Parker, told Officer Swanton that he heard one of the subjects say, "hurry up."

The doorbell camera at 202 Oriole Drive captured video footage showing the front of a white pickup truck in a residential driveway parked facing the street and four youthful-looking subjects, two riding bicycles followed by two on foot, in the street, passing by the truck. Three of the subjects were wearing dark clothing, and one was wearing a reddish top. Subsequent to this video footage, after being pursued in a foot chase, the four subjects—D.W., his brother C.W., V.R., and S.G.—were placed under arrest. Officer Swanton testified that a single dollar bill was found on D.W.'s person after his arrest.

Of the four subjects, only C.W. testified at the hearing. He confirmed the presence of all four subjects at the scene at the time of the burglary, but stated that V.R. was the one who reached into the vehicle. Officer Louis Pellissier of the SPD, who was present when V.R. and S.G. gave statements after their arrests,

---

[3] The petition identifies the owner of the pickup truck as Patrick M. Anderson (the victim). The victim did not testify at the hearing.

testified at the hearing that V.R. and S.G. indicated that it was D.W. and C.W. who entered the truck and stole items from vehicles on the day in question.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, D.W. claims that there was no identification of him as the perpetrator in this case. He notes that although witnesses said they saw a group of juveniles in the neighborhood and that one of them entered the truck, they could not identify anyone or even describe the perpetrator's clothing. Further, these witnesses were not subject to cross examination since they were not called to testify at the hearing. D.W. contends that the one-dollar bill found on his person at the time of his arrest was "strictly coincidental." He argues that the State did not present any direct evidence that he entered the victim's truck. D.W. claims that the adjudication was based solely on the fact that he was seen in the neighborhood and had a single dollar bill in his pocket at the time of his arrest. He notes that while he was captured on video in the area with other juveniles, the video was not enough evidence to make him liable as a principal. D.W. also notes that the State alleged a specific intent crime in this case and was required to prove beyond a reasonable doubt that he had the requisite criminal intent. Thus, he concludes the State failed to prove either that he was the person who entered the truck, or that he aided or abetted the person who entered the truck.

The State argues that the evidence was sufficient to sustain the adjudication. The State notes that one of the officers, Officer Pellissier, testified at the hearing that he was present during the interview of two of the subjects arrested that day and that both of them implicated D.W. and his brother, C.W., as the perpetrators of the instant offense.[4] The State further argues that the dollar bill recovered from D.W.

_____

[4] The admission of Officer Pellisier's hearsay testimony is at issue in assignment of error number two. We note that the entirety of the evidence, both admissible and inadmissible, must be considered in determining the sufficiency of the evidence. If the entirety of the evidence, both

4

was the proceeds of the instant burglary, noting that the victim reported that a dollar bill was missing from his wallet, which had been moved from the center console to the back of the truck. The State notes that the juvenile court expressed some concern about C.W.'s credibility, which the State argues further entitled the juvenile court to find that D.W. was one of the perpetrators of the instant offense. Finally, the State contends that the evidence of flight provided further circumstantial evidence of D.W.'s guilt.

In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch. Code art. 883; **State in Interest of D.L., Jr.**, 2017-0891 (La. App. 1st Cir. 11/1/17), 233 So.3d 671, 676. Accordingly, in juvenile delinquency cases, the standard of review for the sufficiency of evidence is that enunciated in **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), *i.e.*, whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State ex rel. J.S.**, 2000-2514 (La. App. 1st Cir. 2/16/01), 808 So.2d 459, 461. The **Jackson** standard is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. **State ex rel. D.F.**, 2008-0182 (La. App. 1st Cir. 6/6/08), 991 So.2d 1082, 1085, <u>writ denied</u>, 2008-1540 (La. 3/27/09), 5 So.3d 138.

---

admissible and inadmissible, was insufficient to support the adjudication, the accused is entitled to an acquittal and no further inquiry as to trial errors is necessary. See **State v. Hearold**, 603 So.2d 731, 734 (La. 1992). On the other hand, when the entirety of the evidence, even evidence erroneously admitted, is sufficient to support the adjudication, the accused is not entitled to an acquittal, and the reviewing court must consider assignments of trial error to determine whether the accused is entitled to a new trial. **Id.**

Simple burglary is "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein[.]" La. R.S. 14:62(A). The intent required for simple burglary is "the specific intent to commit either a felony or a theft at the time of his unauthorized entry." **State v. Marcello**, 385 So.2d 244, 245 (La. 1980). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); **State in Interest of T.C.**, 2018-1246 (La. App. 1st Cir. 12/21/18), 269 So.3d 716, 719. Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the accused. Specific intent is a legal conclusion to be resolved ultimately by the trier of fact. **State in Interest of K.H.**, 2021-0628 (La. App. 1st Cir. 10/4/21), 2021 WL 4551034, at *3 (unpublished).

Louisiana Revised Statutes 14:24 provides that all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. The accused's mere presence at the scene is not enough to "concern" him in the crime. Only those persons who knowingly participate in the planning or execution of a crime may be said to be "concerned" in its commission, thus making them liable as principals. A principal may be connected only to those crimes for which he has the requisite mental state. **State in Interest of D.M.**, 2017-1418 (La. App. 1st Cir. 2/21/18), 2018 WL 1007352, at *4 (unpublished). However, "[i]t is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intention." **State ex rel K.J.C.**, 2009-0658

6

(La. App. 1st Cir. 9/11/09), 2009 WL 3162216, at *3 (unpublished) (quoting **State v. Anderson**, 97-1301 (La. 2/6/98), 707 So.2d 1223, 1225 (*per curiam*)).

Where the key issue is the accused's identity as the perpetrator of the crime, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification to carry its burden of proof. **State in Interest of T.B.**, 2020-0929 (La. App. 1st Cir. 2/19/21), 320 So.3d 1143, 1150. Positive identification by even one witness may be sufficient to support a conviction. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. **D.M.**, 2018 WL 1007352, at *4.

Officer Swanton interviewed witnesses J.O. and Miles Parker, both of whom did not testify at the hearing. Officer Swanton confirmed that J.O. could not remember which subject he saw enter the truck and could not specify the number of subjects he saw on the street at the time. Officer Swanton testified that, based on his previous experience, he considered the statement heard by Mr. Parker—one of the subjects telling another one to "hurry up"—to be the typical behavior of a lookout. Officer Swanton confirmed that he did not recall any distinguishing marks on the dollar bill found on D.W. at the time of his arrest. Officer Swanton further confirmed that a number of credit cards that were in the victim's wallet at the time of the offense were not stolen. He noted that the foot pursuit took place not long after the initial call reporting the burglary.

Officer Pellissier also responded to the scene on Oriole Drive and transported one of the male subjects placed under arrest, V.R. Officer Pellissier was present when V.R. and S.G. participated in police interviews. While V.R. and S.G. did not testify at the hearing, Officer Pellissier testified that V.R. stated that C.W. and his brother D.W. "were inside the vehicle stealing from at least four

7

vehicles" on that evening. Officer Pellissier further testified that S.G.'s statements were "concurrent" with V.R.'s statements.

C.W., D.W.'s brother, testified at the hearing. C.W. confirmed that he was riding bicycles with D.W. and was arrested with D.W. on the day in question in relation to money missing from a wallet in a truck. He confirmed that V.R. and S.G. were also with them. He testified that V.R. was the one who reached into the vehicle. However, C.W. stated that he turned away after he saw V.R. reach into the vehicle and did not see V.R. take anything. C.W. said he had no knowledge of any plans of V.R. to take anything from the vehicle. When specifically asked if he saw V.R. take anything, C.W. said he "wasn't looking." He added, "I turned around and he [V.R.] was reaching in the car."

Sergeant Joel Hoskins of the SPD obtained a search warrant for D.W.'s cell phone after his arrest. Pertinent to the instant case, on May 15, 2021, the day after the instant offense, communications between D.W. and a contact labeled "Vonte" included a text message by Vonte stating, in part, "i heard u had a gun to yo head … then i heard yall had hid the wallet … i swear i had to let my anger out in tears cuz when they put them in that cop car i had to just walk away, but my mama not mad ca we aint do nun, shiii these n***** be snitching i swea[.]" D.W. replied, "Bro I didn't have the wallet[.]" Vonte replied, "ik[.]"

The trier of fact, in this case, the juvenile court, is charged with making credibility determinations. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. Such a determination rests solely with the trier of fact. A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. In the absence of internal contradictions and

irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support an adjudication. See **T.C.**, 269 So.3d at 719.

Because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the juvenile court was clearly wrong in its factual findings. See La. Const. art. 5, § 10; **T.C.**, 269 So.3d at 719. In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. **D.M.**, 2018 WL 1007352, at *3.

Herein, Officer Pellissier testified that both V.R. and S.G. stated that brothers D.W. and C.W. entered the vehicle and that they were stealing from at least four other vehicles that evening. Based on additional testimony presented at the hearing, D.W. took flight when officers pursued him after the burglary. Although an individual's flight does not in and of itself indicate guilt, it can be considered as circumstantial evidence that the individual has committed a crime as flight shows consciousness of guilt. **State in Interest of M.P.**, 2017-0892 (La. App. 1st Cir. 11/1/17), 233 So.3d 633, 641 (citing **State v. Williams**, 610 So.2d 991, 998 (La. App. 1st Cir. 1992), writ denied, 617 So.2d 930 (La. 1993)). Furthermore, though he denied having "the wallet[,]" D.W.'s awareness and guilt were further substantiated by the text messages obtained from his cell phone records. We further find the fact that the exact amount of money the victim stated was missing from his wallet, a single dollar bill, was on D.W.'s person when he was arrested does not appear to be coincidental in context of the other evidence presented at the hearing.

Finally, the testimony of D.W.'s own brother, C.W., further implicated D.W. in the instant offense. Specifically, C.W. admitted that he and D.W. were present when the burglary of the vehicle occurred, though he claimed it was V.R. who reached into the vehicle. C.W. then claimed that he was not looking and that C.W. was unaware as to something being stolen from the vehicle. He stated that he was not questioned by the police. While the juvenile court apparently accepted Officer Pellissier's testimony in full, the court expressed concern as to C.W.'s credibility. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. **T.C.**, 269 So.3d at 719. An appellate court ordinarily may not substitute its appreciation of the evidence for that of the fact finder. **State in Interest of T.E.**, 2012-0517 (La. 6/29/12), 91 So.3d 292, 294-95 (*per curiam*) (citing, *e.g.*, **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (*per curiam*)) ("[The] due process, rational fact finder test of **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict.").

Viewing the evidence in its entirety, whether admissible or inadmissible, in the light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that D.W. was guilty of simple burglary. Thus, after undertaking the constitutionally-mandated review of the law and facts, we find the evidence was sufficient to support the adjudication. Assignment of error number one lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, D.W. argues that the juvenile court erred in overruling his counsel's objection to hearsay testimony elicited from Officer

Pellissier. D.W. contends that Officer Pellissier had no purpose at the hearing other than to introduce V.R.'s statement. D.W. notes that V.R. did not testify and was not subpoenaed. D.W. argues V.R.'s statement was clearly testimonial and that the content of the statement fell within the definition of hearsay. He contends that since the fact of the statement was not relevant, the testimony was clearly being offered for its truth. Thus, he argues he was denied his right to confront his accuser. Finally, D.W. argues that it cannot be said that the error was harmless, as V.R.'s statement and the fact that others had made consistent statements was the only evidence offered by the State connecting him with the burglary. The State concedes that the testimony was inadmissible but argues its admission was harmless, as it was cumulative to Officer Pellissier's testimony about S.G.'s statement, to which the defense "opened the door" and did not object.

Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than the testifying witness which is introduced for the truth of its content. However, if such a statement is offered for any other purpose, then the statement is not hearsay. La. Code Evid. art. 801(C). **State v. Patton**, 2010-1841 (La. App. 1st Cir. 6/10/11), 68 So.3d 1209, 1219-20. Hearsay evidence is inadmissible except as specified in the Louisiana Code of Evidence or other legislation. La. Code Evid. art. 802.

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to confront the witnesses against him. The confrontation clause of the Louisiana Constitution specifically and expressly guarantees an accused the right "to confront and cross-examine the witnesses against him." La. Const. art. I, § 16. Confrontation not only means the ability to confront the witnesses physically but also to secure for the accused the opportunity of cross-examination, which is its main and essential purpose. Cross-examination is the principal way to test the believability and truthfulness of the testimony, and it

11

has traditionally been used to impeach, or discredit, the witness. **State v. Robinson**, 2001-0273 (La. 5/17/02), 817 So.2d 1131, 1135.

Traditionally, for purposes of the Confrontation Clause, all hearsay statements were admissible if (1) the declarant was unavailable to testify, and (2) the statement fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." **Ohio v. Roberts**, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (overruled, in part). But, in **Crawford v. Washington**, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court overruled **Roberts**, insofar as it applies to out-of-court statements that are "testimonial" in nature. The **Crawford** Court held that the adequate "indicia of reliability" standard set forth in **Roberts** is too amorphous to adequately prevent the admission of "core testimonial statements that the Confrontation Clause plainly meant to exclude." **Crawford**, 541 U.S. at 63, 124 S.Ct. at 1371; **State v. Kennedy**, 2005-1981 (La. 5/22/07), 957 So.2d 757, 775-76, rev'd, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (holding the Eighth Amendment's Cruel and Unusual Punishments Claus prohibits imposing the death penalty for the rape of a child in cases where the victim did not die and death was not intended), opinion modified on denial of reh'g, 554 U.S. 945, 129 S.Ct. 1, 171 L.Ed.2d 932 (2008).

Article 801(D)(4) incorporates what was formerly La. R.S. 15:447 and 448, known as the *res gestae* exception to the hearsay rule. *Res gestae* is defined as events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive, and spontaneous words and acts of the participants. **Patton**, 68 So.3d at 1220 (citing **State v. Castleberry**, 98-1388 (La. 4/13/99), 758 So.2d 749, 765, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999)). This doctrine includes not only spontaneous utterances and declarations made before and after commission of a crime, but also includes

testimony of witnesses pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. It is possible that a police officer, in explaining his own actions, may refer to statements made to him by other persons, not to prove the truth of the out-of-court statements, but to explain the sequence of events leading to the arrest of the accused from the viewpoint of the investigating officer. **Patton**, 68 So.3d at 1220.

Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused. Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation" exception. **State v. Hearold**, 603 So.2d at 737. Likewise, such testimony may not, under the guise of asking the police to describe the course of their investigation, be used by the State as an indirect method of bringing before the trier of fact the presumptively unreliable statement of a non-testifying participant implicating the defendant in the crime. See **State v. Broadway**, 96-2659 (La. 10/19/99), 753 So.2d 801, 810, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000) (citing **Lee v. Illinois**, 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514 (1986); **Bruton v. United States**, 391 U.S. 123, 135-36, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968) ("A codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another")).

The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the trier of fact will

consider the statement for the truth of the matter asserted. However, when hearsay testimony from a police officer is improperly introduced into evidence, it will be considered harmless error if it is found to be cumulative and corroborative of other properly admitted evidence. **State v. Magee**, 2013-1417 (La. App. 1st Cir. 3/24/14), 143 So.3d 532, 537. The test for harmless error is whether the guilty verdict rendered was surely unattributable to the error. **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); **State v. Morgan**, 99-1895 (La. 6/29/01), 791 So.2d 100, 104 (*per curiam*).

Herein, after the State asked Officer Pellissier if V.R. made any statements during the police interview that took place after his arrest, D.W.'s counsel objected on the grounds of hearsay. The juvenile court overruled the objection based on the State's explanation that the testimony was being presented for "[t]he fact that it was said, not necessarily the fact that it was true." Officer Pellissier then testified that V.R. said that C.W. and D.W. "were inside the vehicle stealing... ." Officer Pellissier subsequently testified that S.G.'s statements were "concurrent" with V.R.'s statements.

The instant case is comparable to **State v. Arbuthnot**, 367 So.2d 296 (1979). Therein, the Louisiana Supreme Court reversed the defendant's conviction on the basis of a police officer's hearsay testimony regarding a non-testifying witness's positive identification of the defendant. Although another eyewitness identified the defendant, the Court reasoned that the hearsay description of the non-testifying witness improperly bolstered the State's identification testimony by its only identification witness. **Id.** at 298-99.

Additionally, comparable cases have recognized the inherent unreliability of hearsay statements by accomplices who do not appear at trial. In **Lee,** 476 U.S. at 530, the defendant and codefendant were charged with committing a double murder and were tried jointly in a bench trial in which neither defendant testified.

The Court found that the trial court's reliance on the codefendant's confession as substantive evidence against the defendant violated the defendant's right under the Confrontation Clause. In finding the codefendant's statement improperly admitted, the Court noted: "the arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." **Id.** at 541, 106 S.Ct. at 2062 (quoting **Bruton v. United States**, 391 U.S. 123, 123, 88 S.Ct. 1620, 1631, 20 L.Ed.2d 476 (1968)).[5]

In this case, Officer's Pellissier's testimony regarding statements made by two of the subjects after all four subjects were arrested was not needed to show why the officers reported to the area of the burglary. Thus, Officer Pellisier's hearsay identification testimony was not used to show why the officers acted as they did, but was instead used to prove D.W.'s identity as the perpetrator. Officer Pellisier's testimony corroborated the circumstantial evidence and the testimony by the sole eyewitness at the hearing, C.W., whose testimony standing alone would not have been enough to establish all of the elements of the offense. Specifically, while C.W. placed D.W. at the scene at the time of the offense, mere presence at scene is not enough to concern him in the crime or establish "the specific intent to commit either a felony or a theft" at the time of the unauthorized entry. See **Marcello**, 385 So.2d at 245.

While the State notes that there was no objection to Officer Pellissier's testimony regarding S.G.'s police statement, S.G.'s statement was simply described as being "concurrent" with V.R.'s statement without any specific testimony as to the content of S.G.'s statement. Therefore, the lack of a contemporaneous objection in this instance does not defeat D.W.'s claim of

---

[5] The **Lee** Court reversed the defendant's conviction and remanded the case for the state courts to consider whether the error in admitting the evidence was harmless. **Id.** at 547, 106 S.Ct. at 2065.

15

substantial prejudice. Unobjected to hearsay that is the exclusive evidence of guilt is not evidence at all. **Magee**, 143 So.3d at 538. In this case, outside of the hearsay testimony by Officer Pellissier, there was no direct evidence of D.W.'s participation in the unauthorized entry or that D.W. had the specific intent to commit a felony or a theft.

We find, as the State now concedes, the juvenile court erred in overruling D.W.'s objection of the ground of hearsay. Further, based on our review of the record, we find that the juvenile court, in adjudicating D.W. delinquent in this case, gave evidentiary weight to the hearsay testimony implicating D.W. While C.W.'s testimony placed D.W. at the scene at the time of the offense, C.W. also presented the hypothesis of innocence that unbeknownst to him (and presumedly D.W.), the other two juveniles, V.R. and S.G., committed the burglary. Without the hearsay testimony that was erroneously admitted, C.W.'s testimony and the remaining circumstantial evidence, namely, D.W.'s presence at the scene, flight prior to arrest, possession of a single dollar bill at the time of his arrest, and text messages sent after his arrest, are insufficient to prove the elements of the offense or to refute the hypothesis of innocence in this case. Therefore, we cannot say that the adjudication was surely unattributable to the erroneous admission of hearsay evidence. Because we do not find that the inadmissible hearsay was harmless in this case, we hereby reverse D.W.'s adjudication, vacate the disposition, and remand the matter for a new adjudication hearing.

**ADJUDICATION REVERSED; DISPOSITION VACATED; REMANDED FOR A NEW ADJUDICATION HEARING.**

16